UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

———

No. 1:24-cv-00170

———

**Sportradar US LLC et al.,**

*Plaintiffs,*

v.

**Sportscastr, Inc., d/b/a Panda Interactive,**

*Defendant.*

———

## OPINION AND ORDER

Before the court is defendant Panda's motion to dismiss, transfer, or stay. Doc. 11. Because a substantially similar case was first filed in the Eastern District of Texas—one involving all of the patents at issue in the present declaratory-judgment action—the court grants Panda's motion to the extent that it requests a transfer.

### I. Background

This race-to-the-courthouse patent dispute involves two sports-technology organizations: Sportradar vs. Sportscastr (doing business as Panda Interactive). Panda patented technology for providing sports broadcasts with synchronized live data. Sportradar allegedly provides video-streaming software and systems that implement Panda's patented technology and infringe the patents. Sportradar comprises four relevant entities:

- Sportradar Group AG: parent company (Switzerland)
- Sportradar AG: manufacturer subsidiary (Switzerland)
- Sportradar US LLC: marketer/distributor U.S. subsidiary
- Sportradar Solutions LLC: marketer/distributor U.S. subsidiary

Panda sued Sportradar Group AG, the parent company, in the Eastern District of Texas on October 5, 2023. *SportsCastr Inc. v. Sportradar Group, AG* (*E.D. Tex. Action*), No. 2:23-cv-00472, Doc. 1 (E.D. Tex. Oct. 5, 2023). Panda claimed infringement of three patents (10,805,687; 11,039,218; and 10,425,697). *Id.* Service of

summons was not executed until December 14, 2023. *E.D. Tex. Action*, No. 2:23-cv-00472, Doc. 6. The parties dispute who is at fault for the delay. The court extended the answer deadline to February 12, 2024. *E.D. Tex. Action*, No. 2:23-cv-00472, Doc. 7.

The same day that it sued Sportradar Group AG in the Eastern District of Texas, Panda sued Genius Sports Ltd. in the Eastern District of Texas for infringement of the same patents. *Sports-Castr Inc. v. Genius Sports Ltd.*, No. 2:23-cv-00471 (E.D. Tex. Oct. 5, 2023). Genius Sports is unrelated to the Sportradar parties.

On February 8, 2024, plaintiffs in this case initiated the present lawsuit. *Sportradar US LLC v. Sportscastr, Inc.* (*Delaware Action*), No. 1:24-cv-00170, Doc. 1 (D. Del. Feb. 8, 2024). The parent company is not a party. Instead, its manufacturer subsidiary (Sportradar AG) and two of its U.S. marketing/distributing subsidiaries (Sportradar US LLC and Sportradar Solutions LLC) sued Panda seeking a declaratory judgment of noninfringement of the same three patents, along with an injunction. *Id.* at 1. The next day, on February 9, 2024, the parent company filed a motion to dismiss the Eastern District of Texas action for lack of personal jurisdiction or, alternatively, to transfer it to Delaware. *E.D. Tex. Action*, No. 2:23-cv-00472, Doc. 11. The motion also identified the subsidiaries, described their roles, and argued that Panda failed to sue the U.S. subsidiaries in the Eastern District of Texas because that court is an improper venue considering their lack of contacts.

A month later, on March 8, 2024, Panda amended its complaint in the Eastern District of Texas to add the manufacturer, Sportradar AG, as a defendant. *E.D. Tex. Action*, No. 2:23-cv-00472, Doc. 17. The amended complaint also asserted infringement of another patent (11,871,088).

On March 15, 2024, Panda filed the motion to dismiss, transfer, or stay that is now before this court. *Delaware Action*, No. 1:24-cv-00170, Doc. 11. Panda's briefing on that motion argues that the E.D. Tex. action was the first filed, even though the manufacturer is the only common party between the two cases and was not

added to the E.D. Tex. action until after the Delaware action was filed. *Delaware Action*, No. 1:24-cv-00170, Doc. 12. Because none of the exceptions to the first-to-file rule applies, Panda argues, the court should exercise its discretion under the Declaratory Judgment Act and dismiss the Delaware action. In response, the manufacturer and U.S. subsidiaries argue that the Eastern District of Texas lacks jurisdiction over both the manufacturer and the parent company, so the Delaware action was the first filed. *Delaware Action*, No. 1:24-cv-00170, Doc. 16. Panda's motion argues that, in the alternative, the court should stay the action pending resolution of the personal-jurisdiction issue or transfer it to allow the Eastern District of Texas to determine in which forum the case should proceed. *Delaware Action*, No. 1:24-cv-00170, Doc. 12.

The two defendants in the Eastern District of Texas—the parent company (Sportradar Group AG) and manufacturer (Sportradar AG)—then filed a second motion to dismiss for lack of personal jurisdiction or, alternatively, to transfer.[1] *E.D. Tex. Action*, No. 2:23-cv-00472, Doc. 27. The Eastern District of Texas issued a memorandum opinion and order denying the motion. *E.D. Tex. Action*, No. 2:23-cv-00472, Doc. 57. The court found that it had personal jurisdiction over both defendants. Also in that opinion, the court rejected the manufacturer and parent company's argument that the Delaware case was the first to be filed. The rejected first-to-file argument relied on the premise that "the first case filed by parties over whom the court had jurisdiction is properly considered the first-filed case." *Id.* at 15. The court's analysis described in detail Panda's argument: that the Federal Circuit rejected a similar first-to-obtain-jurisdiction argument in a mandamus action. *See In re Seattle SpinCo, Inc.*, 817 F. App'x 987, 988 (Fed. Cir. 2020) (unpublished). The court thus found that "[the parent company and manufacturer's] first-filed case argument fails." *E.D. Tex. Action*, No. 2:23-cv-00472, Doc. 57 at 16. Finally, the court thoroughly analyzed the motion to transfer under 28

---

[1] That is, the first motion to dismiss or transfer in the time since Panda amended its complaint to add the manufacturer subsidiary.

U.S.C. § 1404(a) and the public- and private-interest factors of *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004). It found that the manufacturer and parent company had not carried their burden of showing that Delaware is the "clearly more convenient" forum. *E.D. Tex. Action*, No. 2:23-cv-00472, Doc. 57 at 20.

In the time since the Eastern District of Texas denied that motion to dismiss or transfer, there have been a few notable developments in that case. On October 15, 2024, the Eastern District of Texas consolidated the case with Panda's lawsuit against Genius Sports (and against a host of Genius-related defendants). The original suit against the Sportradar parties was designated as the lead case. *E.D. Tex. Action*, No. 2:23-cv-00472, Doc. 72 at 1.

The same day, the Sportradar parent company and manufacturer filed their answer to Panda's amended complaint, also asserting a counterclaim seeking declarations of unpatentability, invalidity, and noninfringement. *E.D. Tex. Action*, No. 2:23-cv-00472, Doc. 73. The Genius Sports defendants did the same on December 9, 2024. *E.D. Tex. Action*, No. 2:23-cv-00472, Doc. 104.

Finally, on February 14, 2025, Panda filed further amended complaints against both groups of defendants, adding antitrust claims. *E.D. Tex. Action*, No. 2:23-cv-00472, Docs. 126 (Sportradar parent company and manufacturer), 127 (Genius Sports defendants).

The E.D. Tex. action is scheduled for a claim-construction hearing on May 9, 2025, and for trial on November 7, 2025. *E.D. Tex. Action*, No. 2:23-cv-00472, Doc. 93.

## II. Analysis

As previously stated, the issue before the court is whether to dismiss, transfer, stay, or proceed with the Delaware action in light of the E.D. Tex. action. For the following reasons, the court transfers the case to the Eastern District of Texas.

This is a first-to-file case involving an action for declaratory judgment of patent noninfringement. Such cases impact the Federal Circuit's mandate to promote uniformity in patent practice.

*See Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1345 (Fed. Cir. 2005) (finding that the "question whether to accept or decline jurisdiction in an action for a declaration of patent rights in view of a later-filed suit for patent infringement impacts this court's mandate to promote national uniformity in patent practice"). Accordingly, it falls within the Federal Circuit's exclusive subject-matter jurisdiction, *see Serco Servs. Co. v. Kelley Co.*, 51 F.3d 1037, 1038 (Fed. Cir. 1995), and Federal Circuit law applies.

The Sportradar plaintiffs in this case (Sportradar US LLC, Sportradar Solutions LLC, and Sportradar AG) seek a declaratory judgment. The controlling statute, which authorizes such lawsuits, is the Declaratory Judgment Act: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

The word "may" in that statute affords district courts "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). But to decline to exercise jurisdiction, a district court's reasons must comport with the purpose of the Declaratory Judgment Act. *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 813–14 (Fed. Cir. 1996), *abrogated in part on other grounds*, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007). The purpose of the Declaratory Judgment Act in patent cases "is to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987).

In the context of competing, parallel patent claims, "district courts enjoy a 'double dose' of discretion: discretion to decline to exercise jurisdiction over a declaratory judgment action *and* discretion when considering and applying the first-to-file rule and its equitable exceptions." *Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1362 (Fed. Cir. 2020). "The 'first-to-file' rule is a

doctrine of federal comity, intended to avoid conflicting decisions and promote judicial efficiency, that generally favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012). The first-to-file rule is triggered "when two cases are the same or very similar"—that is, "[w]here the overlap is complete or nearly complete." *In re Telebrands Corp.*, 773 F. App'x 600, 602 (Fed. Cir. 2016) (unpublished). Under the first-to-file rule, generally "the first-filed action is preferred, even if it is declaratory." *Commc'ns Test Design*, 952 F.3d at 1362. "Under the first-to-file rule, a district court may choose to stay, transfer, or dismiss a later-filed duplicative action." *Id.*

However, there are equitable exceptions. "For example, a district court may consider 'a party's intention to preempt another's infringement suit when ruling on the dismissal of a declaratory action, but that consideration is merely one factor in the analysis.'" *Id.* (quoting *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008)). "Other factors include the convenience and availability of witnesses, the absence of jurisdiction over all necessary or desirable parties, and the possibility of consolidation with related litigation." *Id.* These exceptions are discussed below, after the determination that the first-to-file rule favors the Eastern District of Texas action.

### A. Applicability of the rule

The threshold question is whether the first-to-file rule has been triggered—that is, whether the "two cases are the same or very similar," or "the overlap is complete or nearly complete." *Telebrands*, 773 F. App'x at 602. The parties both argue that it does apply. They simply disagree about which direction it points. *Compare Delaware Action*, No. 1:24-cv-00170, Doc. 12 at 9 (Panda's brief in support) ("There can be no dispute that the first-filed suit is in the Eastern District of Texas . . . ."), *with Delaware Action*, No. 1:24-cv-00170, Doc. 16 at 6 (Sportradar defendants' brief in opposition) ("Regardless, because the Eastern

District of Texas lacked jurisdiction over Sportradar Group, and this lawsuit was filed before Panda filed its new Amended Complaint adding a new party, the lawsuit pending here is the first-filed case.").

The court agrees. Although the party overlap is not perfect between the two cases, all of the patents at issue in this Delaware action are asserted in the Eastern District of Texas. Only one patent in the Eastern District of Texas action (the '088 patent) is not at issue in Delaware. This amounts to a nearly complete overlap of the issues. *See, e.g.*, *Samsung Elecs. Co. v. Netlist, Inc.*, No. 1:21-cv-01453, 2022 WL 3027312 (D. Del. Aug. 1, 2022) (applying the first-to-file rule where four of eight patents did not overlap).

## B. Application of the rule

Given that the first-to-file rule applies, the next question is which case was filed first. The Sportradar plaintiffs argue that Panda's initial patent-infringement claims against Sportradar Group AG do not count for first-to-file purposes because the Eastern District of Texas lacks personal jurisdiction over that defendant. *See Delaware Action*, No. 1:24-cv-00170, Doc. 16 at 6–7. They also argue that Panda initially named the wrong party—an uninvolved holding company—in the Delaware action, and named the manufacturer (over whom Texas also lacks jurisdiction) only after the Delaware action was filed. *Id.* at 8–9. Lastly, they argue that the Eastern District of Texas is an improper venue as to the U.S. subsidiaries, rendering that court improper as to all of three of the relevant parties. *Id.* at 7–11.

These party-centric arguments fail to persuade. As an initial matter, the Eastern District of Texas found that it has personal jurisdiction over both the parent company and the manufacturer. *E.D. Tex. Action*, 2:23-cv-00472, Doc. 57 at 14.

Furthermore, although courts seem to disagree on this point, this court does not read the law to define *first-filed lawsuit* as the first lawsuit in which a court had personal jurisdiction over the correct parties or all of the relevant parties. The Federal Circuit instead appears to deem as first-filed the first lawsuit literally to

be filed—i.e., the first one involving the patents that trigger the first-to-file rule. In discussing the rule, for example, the Federal Circuit described the first-to-file rule as "favor[ing] pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions," and explained that the "filing date of an action derives from the filing of the complaint." *Commc'ns Test Design*, 952 F.3d at 1362. In referencing "the filing of the complaint" as the relevant date for first-to-file purposes, the court cited Federal Rule of Civil Procedure 3, which provides that "[a] civil action *is commenced* by filing a complaint with the court." Fed. R. Civ. P. 3 (emphasis added). This suggests that the date the action was commenced, not the date on which a relevant party was added by an amended complaint, is the determinative date. The Federal Circuit's holding in *Seattle SpinCo* was consistent with this principle: the court declined to compel a district court to treat as first-filed the first case in which the district court obtained personal jurisdiction. *See* 817 F. App'x at 989 (denying mandamus).

Other circuits have been more explicit on this point. For example, the Third Circuit observed: "Nearly fifty years ago, this court adopted what has become known as the 'first-filed' rule. We concluded that '[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it.'" *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988) (quoting *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 929 (3d Cir. 1941)), *aff'd*, 493 U.S. 182 (1990); *see also Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 189 F.2d 31, 34–35 (3d Cir. 1951) (holding that the chronologically-first-filed case should proceed notwithstanding failure to sue one of the defendants until after the second case was filed), *aff'd*, 342 U.S. 180 (1952).

So too in the Fifth Circuit: "[R]egardless of whether or not the suits here are identical, if they overlap on the substantive issues, the cases would be required to be consolidated in . . . the jurisdiction first seized of the issues." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (alterations in original)

(quoting *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 n.6 (5th Cir. 1971)).

This court has also addressed the issue. In *Schering Corp. v. Amgen Inc.*, a similar situation arose. 969 F. Supp. 258 (D. Del. 1997). The court held that the case in which a court "first acquired subject matter jurisdiction over the dispute" was "considered first-filed, regardless of the addition of a new party." *Id.* at 267 (also noting that "the point of inquiry is the original complaint, not the amended complaint"). That was not a one-off decision. *See, e.g.*, *Time Warner Cable, Inc. v. GPNE Corp.*, 497 F. Supp. 2d 584, 588–90 (D. Del. 2007) (dismissing action that was filed second but the first to involve a certain party, and reasoning that "the issues in the current matter concern the same facts, as well as the same patent, as the Texas litigation").

The Sportradar plaintiffs here cite two cases in which a court found that a chronologically-first-filed suit was actually second-filed for purposes of the rule because of the failure to name a party in the first forum until after that party sued in another forum. *Delaware Action*, 1:24-cv-00170, Doc. 16 at 8; *see Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 131–32 (S.D.N.Y. 2003); *Mallinckrodt Med. Inc. v. Nycomed Imaging AS*, No. 4:98-cv-00444, 1998 WL 962203, at *3–5 (E.D. Mo. Nov. 13, 1998). Both of those cases reasoned that the amended complaint (adding the relevant defendant) in the first forum was filed after the lawsuit in the second forum and did not relate back to the original complaint in the first forum. But those cases are in tension with the Federal Circuit caselaw mentioned above and in conflict with the Delaware rule that "the point of inquiry is the original complaint, not the amended complaint." *Schering Corp.*, 969 F. Supp. at 267. And *Mallinckrodt* relied on the lack of personal jurisdiction over the first defendant, which makes it distinguishable. *See* 1998 WL 962203, at *4. The court therefore does not find them persuasive.

All of the patents at issue in this case ('687, '218, and '697) were at issue in the Eastern District of Texas first. Determining which suit was first filed does not turn on whether the parties are

asymmetrical, the manufacturer was added to the suit in the Eastern District of Texas until after it sued in Delaware, or venue might have been improper in the Eastern District of Texas had Panda tried to sue the U.S. subsidiaries there first.[2] Accordingly, the Eastern District of Texas action was the first to be filed for purposes of the rule. So that is the case that should proceed unless an exception applies.

### C. Exceptions to the rule

Given that the rule favors the Eastern District of Texas action as first-filed, the next question is whether an exception favors proceeding with the Delaware action.

Trial courts have discretion "to make exceptions" to the general rule "in the interest of justice or expediency." *Commc'ns Test Design*, 952 F.3d at 1362. Commonly considered factors are (1) whether the party filed for a declaratory judgment with the intent of preempting an infringement suit, (2) the convenience and availability of witnesses, (3) the absence of jurisdiction over all necessary or desirable parties, and (4) the possibility of consolidation with related litigation. *Id.* The court should "decide whether hearing the case would serve the objectives for which the Declaratory Judgment Act was created." *Micron Tech.*, 518 F.3d at 902 (quotation marks omitted). The main objective, of course, is "to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." *Id.*

#### 1. Intent to preempt

The procedural timing suggests that the Sportradar parties intended to preempt Panda's infringement action—not the other way around. Recall that under the Sportradar parties'

---

[2] The court does not reach the question whether the same result would obtain if there were personal jurisdiction over none of the proper defendants in the first forum. The Eastern District of Texas found that it has personal jurisdiction over the manufacturer, and there appears to be no strategic advantage gained in Panda's failure to name the manufacturer in its original complaint.

interpretation of the first-to-file rule, the first-filed action is that in which the court has personal jurisdiction over the proper parties.

Here, Panda sued the parent company in the Eastern District of Texas, then the manufacturer and U.S. subsidiaries filed the Delaware action, and then the parent company moved to dismiss the Texas action *the next day*. Had the parent company moved to dismiss the Texas action, referencing in the motion the manufacturer and U.S. subsidiaries, and then a week later filed the Delaware action, then perhaps Panda would have amended its complaint in the Texas action before plaintiffs brought this Delaware action. If that happened, then Panda's suit might have been the first-filed under the Sportradar parties' interpretation.

Of course, the Sportradar parties were within their rights to choose their litigation strategy. But there is a strong argument that the Sportradar parties intended to preempt Panda's Texas infringement action with their Delaware declaratory-judgment action. This factor counsel against excepting from the first-to-file rule.

### 2. Convenience and availability of witnesses

In its opinion and order denying the parent company and manufacturer's motion to transfer, the court for the Eastern District of Texas conducted an analysis under 28 U.S.C. § 1404(a) of the convenience of proceeding there relative to proceeding in the District of Delaware. *See E.D. Tex. Action*, No. 2:23-cv-00472, Doc. 57 at 16–20. The court concluded that two factors weighed against transfer to Delaware, while only one factor weighed "slightly in favor of transfer." *Id.* at 20.

The reasons not to transfer to Delaware in that case apply with greater force here and counsel in favor of transferring this Delaware action to the Eastern District of Texas. Given that the Eastern District of Texas is retaining jurisdiction over its action, maintaining the Delaware action in Delaware would further increase the burden on the federal-court system and further risk inconsistent results. *See id.* at 18–19. And in the time since that order

- 11 -

issued, the Eastern District of Texas has consolidated its action with Panda's claims against Genius Sports involving the same patents. This factor also counsels against exception.

### 3. Jurisdiction and possibility of consolidation

Personal jurisdiction and venue present no obstacle to transfer and consolidation in this case. The transfer statute, 28 U.S.C. § 1404(a), provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."

The Delaware plaintiffs (the manufacturer and the U.S. subsidiaries) could have brought the Delaware action in the Eastern District of Texas. Even if it lacks jurisdiction over the U.S. subsidiaries as defendants, they are plaintiffs in this case. *See In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009) ("There is no requirement under § 1404(a) that a transferee court have jurisdiction over the plaintiff or that there be sufficient minimum contacts with the plaintiff; there is only a requirement that the transferee court have jurisdiction over the defendants in the transferred complaint.").

As to venue, the U.S. subsidiaries and manufacturer could have sued Panda in the Eastern District of Texas because Panda, the sole defendant here, resides there for venue purposes. *See* 28 U.S.C. § 1391(b)(1) (venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"), (d) ("in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State"). By bringing the Eastern District of Texas action covering the same patents and accused products as those in the present action, Panda has created sufficient minimum contacts with both the State of Texas and the Eastern District of Texas, and those

contacts are sufficiently related to the present lawsuit, to subject it to both personal jurisdiction and venue in the Eastern District of Texas. *See Seville v. Maersk Line, Ltd.*, 53 F.4th 890, 895 (5th Cir. 2022) ("specific personal jurisdiction . . . arises when a defendant's minimum contacts with a forum state are related to the pending lawsuit" (quotation marks omitted)).

Even if its contacts were otherwise insufficient, defendant Panda has the right to waive any objection to personal jurisdiction and venue, which it has done by moving to transfer the case to the Eastern District of Texas. *See ECB USA, Inc. v. Savencia, S.A.*, No. 1:19-cv-00731, 2020 WL 5369076, at *2 (D. Del. Sept. 8, 2020) ("By consenting to transfer under Section 1404(a), a defendant waives any argument that the transferee district is not one where the action 'might have been brought' and, therefore, also impliedly waives any argument that the transferee district does not have personal jurisdiction over the defendant.").

And, as mentioned, the Eastern District of Texas has already consolidated Panda's suit against Sportradar with its suit against Genius Sports, suggesting that the court has the bandwidth to consolidate this action, too, if it sees fit. This factor counsels against excepting from the first-to-file rule as well.

### 4. Purpose of the Declaratory Judgment Act

Finally, the purpose of the Declaratory Judgment Act as applied in this case is to provide the Sportradar cohort "relief from uncertainty and delay regarding its legal rights." *Micron Tech.*, 518 F.3d at 902 (quotation marks omitted). Not only would proceeding in parallel litigation in the two forums fail to further that purpose, but doing so would actively impede that purpose. It would undermine certainty by risking inconsistent outcomes.

And because the Texas action was filed first and has been progressing steadily, parallel litigation would add needless delay, undermining justice and expediency. Given that the Eastern District of Texas is exercising jurisdiction in its case, keeping the Delaware case active in Delaware would exceed the amount of work that the federal judiciary needs to do to resolve the dispute. The interests

of the U.S. subsidiaries, the parent company, and the manufacturer all seem to be the same—to obtain a judgment binding on Panda that says the accused products do not infringe the asserted patents. The Sportradar parent company and manufacturer subsidiary are already seeking the same declaratory relief in the Texas action.

Therefore, because none of the factors favors an exception from the first-to-file rule, the court finds that under the first-to-file rule, this action should not proceed in Delaware.

### D. Relief

The final question is whether to "stay, transfer, or dismiss" this case. *Commc'ns Test Design*, 952 F.3d at 1362. Panda primarily seeks dismissal, or alternatively transfer or stay. *Delaware Action*, 1:24-cv-00170, Doc. 12 at 19.

Although Panda seeks transfer or stay only to allow the Eastern District of Texas to resolve the jurisdictional issue, which has already happened, transfer is still the best option. If this case were dismissed, then the U.S. subsidiaries would have to seek to intervene or file another lawsuit to participate in the Texas action because they are parties here but not there. Given the Eastern District of Texas's convenience analysis and the above discussion, *supra* subsection II.C.2, the court finds that transfer is in the interest of justice and convenient for the parties.

## III. Conclusion

Accordingly, defendant Panda's motion to dismiss, transfer, or stay (Doc. 11) is granted in part. Pursuant to the first-to-file rule and 28 U.S.C. § 1404(a) the court hereby orders this case transferred to the Eastern District of Texas, Marshall Division. The case should be assigned to Judge Rodney Gilstrap, so that he can make the decision whether to consolidate this action with Eastern District of Texas action 2:23-cv-00472.

*So ordered by the court on March 26, 2025.*

J. CAMPBELL BARKER
United States District Judge